**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SATO & Co., LLC, et al.,<br><br>    Plaintiff,<br><br>  v.<br><br>S&M PRODUCE, INC., et al.,<br><br>    Defendants.<br><br>PRIDE OF SAN JUAN, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>S&M PRODUCE, INC., et al.,<br><br>    Defendants. | CIVIL ACTION<br>(CONSOLIDATED FOR ALL PURPOSES WITH Case No. 09-cv-0737 (termed))<br><br>Case No. 08-cv-7352<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is a motion for reimbursement of fees and costs [150] filed by the PSJ Plaintiffs[1] seeking reimbursement of $34,576.39 in fees and costs out of the PACA trust assets pursuant to the common fund doctrine. Defendants S&M Produce, Inc. ("S&M"), Donald J. Mided, and Lance K. Mided oppose the PSJ Plaintiffs' motion for fees and costs. Nearly all of the other Plaintiffs[2] also oppose the PSJ Plaintiffs' motion. Four Plaintiffs –

---

[1] The PSJ Plaintiffs include Plaintiffs Pride of San Juan, Inc., Classic Salads, LLC, Intervenor Plaintiffs Dayoub Marketing, Inc., Ruby Robinson Co., Inc, Natural Forest, Inc., Fru-Veg Marketing, Inc., The Kinoko Company, Lakeside Produce, Inc., The Mandolini Company, Inc., and Seashore West, Inc.

[2] Plaintiffs Sato & Co., LLC, The Garlic Company, Champ Produce, Inc., Royal Rose, LLC, California Citrus Specialties, Inc., Northern Pine, Inc., Van Solkema Produce, Inc., Alamax Inc., Dietz & Kobodenko Co., Alpine Foragers Exchange, Inc., World Wide Produce, Inc., Cooseman's Chicago, Inc., Jab Produce, Inc., Jack Tuchten Produce, Inc., Natural Selection Foods, LLC, California Specialty Produce, Inc., and Fresh King, Inc. (collectively, the "Joining Claimants") filed a limited joinder to Defendants' opposition to the motion for reimbursement of fees and costs [156]. Of the non-PSJ

Sato & Co., LLC, The Garlic Company, Champ Produce, Inc., and Royal Rose, LLC's (collectively the "Sato Plaintiffs") – oppose the PSJ Plaintiffs' motion, but have filed a Limited Motion For Reimbursement of Attorney's Fees and Costs [166] seeking reimbursement of $14,097.50 in fees and costs out of the PACA trust assets only if the PSJ Plaintiffs are awarded fees under the common fund doctrine. Plaintiffs Northern Pine, Inc., Van Solkema Produce, Inc., Alamax, Inc., Dietz & Kolodenko Co., Alpine Foragers Exchange, Inc., and California Citrus Specialties, Inc. have filed a response opposing the Sato Plaintiffs' motion [169]. For the reasons stated below, both motions for fees and costs [150, 166] are denied.

## I. Background

This case arises out of the Perishable Agricultural Commodities Act of 1930 (PACA"), 7 U.S.C. §499a *et seq.*, which was enacted to protect sellers of perishable agricultural commodities from unfair conduct by buyers of such commodities, including failure to pay promptly and fully for produce ordered. PACA creates a statutory trust in favor of sellers in produce sold to buyers (*e.g.*, grocery stores and certain agents), under which the buyer holds the produce and any proceeds and receivables from the produce in trust for the benefit of the seller. 7 U.S.C. § 499e(c)(2). In this case, all Plaintiffs sold perishable agricultural commodities to Defendant S&M for which S&M failed to pay Plaintiffs.

On December 23, 2008, Plaintiff Sato & Co., LLC ("Sato") filed suit against S&M and its principals Donald J. Mided, and Lance K. Mided individually [docket no. 08-cv-07352, 1]. That case (no. 08-cv-07352) was assigned to Judge Darrah. Sato filed an emergency motion for

---

Plaintiffs, only Intervening Plaintiff Pearson Food Corporation does not oppose the PSJ Plaintiffs' motion for fees and costs. Pearson has filed no response to the motion for fees.

a temporary restraining order [docket no. 08-cv-07352, 11] on February 16, 2009. On February 19, 2009, Judge Darrah granted Sato's motion for a TRO [docket no. 08-cv-07352, 25].[3]

On February 5, 2009, Plaintiff Pride of San Juan, Inc. ("PSJ") filed a separate lawsuit to enforce its PACA trust rights against Defendants [docket no. 09-cv-00737, 1]; that case (no. 09-cv-00737) was assigned to this Court. On February 12, 2009, Plaintiffs PSJ and Classic Salads, LLC filed a first amended complaint against the Defendants [docket no. 09-cv-00737, 8], and a motion for a temporary restraining order [docket no. 09-cv-00737, 11]. The following day, this Court held a TRO hearing and entered a TRO [docket no. 09-cv-00737, 19].

On February 19, 2009, the Sato case was transferred to this Court; the cases subsequently were consolidated pursuant to an agreement among the parties. At a February 24, 2009 status hearing [30], this Court directed counsel for the parties to work together to prepare various documents, including a proposed consent injunction and agreed order establishing a PACA Trust claims procedure ("consent order"). While the parties were unable to fashion an agreed global consent order, they tendered to the Court two very similar versions of a proposed consent order. One proposal was submitted by the Sato Plaintiffs, Intervening Plaintiffs California Citrus Specialties, Inc. and Natural Selection Foods, LLC, and Defendants. Counsel for PSJ submitted a second proposal. One of the three principal differences between the proposals concerned possible motions for attorneys' fees. The PSJ version allowed PACA trust beneficiaries (*i.e.*, the Plaintiffs and Intervening Plaintiffs) to apply to this Court for reimbursement of expenses incurred in administering the trust, including attorneys' fees, chargeable against the PACA trust res. The version supported by the other parties would have limited the amount of attorneys' fees that could be paid out of the PACA trust fund to the fees listed in the Consent Order itself.

---

[3] At the same time, Judge Darrah granted Sato leave to file a first amended complaint [docket no. 08-cv-07352, 25]. On February 20, 2009, the Sato Plaintiffs filed a first amended complaint [docket no. 08-cv-07352, 26].

3

On March 17, 2009, this Court entered a Consent Injunction and Order for Establishing PACA Trust Claims Procedure (the "Claims Procedure") [53]. With respect to the attorneys' fee dispute, the Court concluded that it was premature to foreclose any possible requests for attorneys' fees so early in the case, as it was unclear at that time what the actual value of the trust would be and what activities the attorneys would undertake for which reimbursement would be sought. Therefore, the Court adopted (with slight modification) PSJ's proposal at ¶ 26 of the Claims Procedure.[4]

On June 26, 2009, the PSJ Plaintiffs filed a motion for reimbursement of fees and costs [150]. The PSJ Plaintiffs contend that they took the role as lead plaintiff after the cases were consolidated, and that they collected $130,625.74 in PACA trust assets for the benefit of all the PACA trust beneficiaries. According to the PSJ Plaintiffs, they incurred 100% of the claimed fees and costs – which total $34,576.39 – collecting those assets, but that 63.2% of the assets will go to the other claimants. They argue that pursuant to the common fund doctrine they should be reimbursed out of the PACA trust assets, such that each PACA claimant is made to bear its "fair share" of the legal expenses.

Defendants oppose the PSJ Plaintiffs' motion for fees on the grounds that (1) attorneys' fees never may be paid out of PACA trust funds, and (2) in any event, the requested fees are not reasonable. The non-PSJ Plaintiffs filed a limited joinder to Defendants' opposition to the motion for reimbursement of fees and costs [156], in which they argue that attorneys' fees can be paid out of a PACA Trust under certain circumstances, but that reimbursement is not appropriate

---

[4] Paragraph 26 of the Claims Procedure [53] provides: "the Court, upon separate application by counsel, and after notice to all creditors and hearing, if necessary, will consider whether and to what extent payment of reasonable compensation should be made to the attorneys for Plaintiffs, the Company, or any other counsel providing efforts relating to the establishment of the Claims Procedure or preservation of the Escrow Account."

here because (1) counsel for the PSJ Plaintiffs was not responsible for creating a common fund from which the PACA Trust beneficiaries all benefit, and (2) an award of attorneys fees out of the PACA trust is not warranted where, as here, there appear to be insufficient funds in the trust to satisfy all of the beneficiaries' claims. With respect to the Joining Claimants' second argument, it is undisputed that the PACA trust currently is worth $132,241.24. The PACA claimants have asserted $528,809.09 in total claims, $467,027.43 of which are undisputed. Therefore, the PACA claimants in this action likely will recover only a small *pro rata* percentage of their claims, and the award of any attorneys' fees out of the PACA trust would further reduce that already small recovery.

On September 9, 2009, the Sato Plaintiffs filed a Limited Motion For Reimbursement of Attorney's Fees and Costs [166]. In that motion, the Sato Plaintiffs reiterate their objections to the PSJ Plaintiffs' motion for reimbursement of fees and costs [150], but contend that if that motion is granted then they should be reimbursed for $14,097.50 in attorneys' fees under a common fund theory as well, claiming they too pursued this litigation on behalf of all the PACA trust beneficiaries to preserve the PACA trust assets.

**II.     Analysis**

The common fund doctrine is an exception to the general rule in this country – commonly known as the "American Rule" – that each party must bear its own litigation expenses. *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The rationale for this equitable doctrine is to spread the costs of litigation among all of its beneficiaries, so that none of them is unjustly enriched by the lead plaintiff's or

5

lead attorney's efforts. *Id.*; see also *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 157 (7th Cir. 1993).

The Seventh Circuit has not considered whether the common fund exception applies to PACA trust funds. Those courts that have considered the issue have reached inconsistent conclusions. Some courts have held that PACA claimants whose litigation efforts "are directly responsible for the availability of the funds from the statutorily created trust * * * are entitled to recover their attorneys' fees out of the fund." *In re Milton Poulos, Inc.*, 947 F.2d 1351, 1353 (9th Cir. 1991); see also *Fresh Kist Produce, L.L.C. v. Choi Corp., Inc.*, 362 F. Supp. 2d 118, 126 (D.D.C. 2005) (awarding attorneys' fees out of PACA trust fund based on the common fund doctrine); *Fishgold v. OnBank & Trust Co.*, 43 F. Supp. 2d 346, 351 (W.D.N.Y 1999) (holding that attorney's fees are recoverable under PACA when common fund exception to the American Rule applies). By contrast, other courts have refused to award attorneys' fees in PACA cases under a common fund theory. See *In re Super Spud, Inc.*, 77 B.R. 930, 932 (Bankr. M.D. Fla. 1987) ("PACA trust beneficiaries * * * take complete priority in payment as to all the assets of the debtor, ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in this court, and ahead of all other priority and general creditors."); *In re Fair*, 134 B.R. 672, 676 (Bankr. M.D. Fla. 1991) (concluding that PACA "does not authorize the award of attorney's fees, costs, or interest, [where] such an award would unfairly reduce estate assets at the expense of other creditors").[5]

---

[5] Defendants' reliance on *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001), for their contention that the common fund doctrine does not apply in the PACA context is misplaced. In *Alanco*, the Second Circuit considered whether an attorney for a produce buyer – a PACA trustee, not a PACA beneficiary – could enforce a lien for unpaid attorney's fees against the proceeds of the suit, which were held in trust for the original seller (the PACA beneficiary). Concluding that "PACA trust beneficiaries are entitled to full payment before trustees may lawfully use trust funds to pay other creditors," the court held that "a PACA trustee may not use PACA funds to pay attorney's fees incurred in collecting accounts receivable held in trust for a seller of perishable agricultural commodities." 239 F.3d at 488. Here, the

Defendants argue that awarding attorneys' fees out of the PACA trust is contrary to the purpose of PACA. However, the primary goal of PACA's trust provision – "provid[ing] unpaid produce sellers with greater protection from the risk of default by buyers," *Alanco*, 239 F.3d at 488 – cuts both ways with respect to the issue of attorneys' fees. On one hand, awarding attorneys' fees to attorneys who expand the PACA trust for the benefit of produce sellers facilitates enforcement of PACA and supports Congress's goal of protecting those sellers from the harm of non-payment. On the other hand, paying attorneys' fees out of the PACA trust diminishes each beneficiary's recovery, and thus impedes realization of the statutory purpose.

The Court accepts the principle that, under certain circumstances, "the 'unjust enrichment' principle used to justify the common fund exception in class actions also justifies application of the exception in the context of PACA trust funds." *Fresh Kist*, 362 F. Supp. 2d at 126. In particular, where it is clear that certain attorneys are directly responsible for the availability of the funds in the PACA trust, and claimants essentially will receive free legal services absent the application of the common fund doctrine, those attorneys may be entitled to compensation out of the PACA trust.

However, in this case, a number of factors counsel against an award of fees under the common fund doctrine. To begin with, no single group of attorneys is solely responsible for the creation of the PACA trust. From the Court's perspective, counsel for the PSJ Plaintiffs (the Keaton firm), counsel for the Sato Plaintiffs (Rynn & Janowsky), and counsel for a number of the intervening plaintiffs (the Martyn firm) each played a significant role in amassing the PACA trust funds. The Seventh Circuit has explained that the application of the common fund doctrine "is most appropriate when (1) the class of persons benefitted by the lawsuit is small and easily

---

attorneys seeking reimbursement represented PACA trust beneficiaries, not trustees. Therefore, *Alanco* is inapposite.

identifiable, (2) the benefits can be traced with some accuracy, and (3) the costs of the litigation can be shifted accurately to those who profit by it." *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d at 157. In light of the fact that multiple firms worked to create the common fund here, the Court cannot accurately identify which claimants "have taken a free ride" on each firm's efforts, and shift the costs of the litigation accordingly. In addition, a number of attorneys jointly undertook many of the efforts that gave rise to the PACA trust fund – including drafting the PACA claims procedure and drafting the First Amended Consolidated Complaint. Consequently, the inequity that the common fund doctrine is designed to prevent – namely, free riding by certain beneficiaries – is not apparent.

Furthermore, as the Claims Procedure document reflects, the parties agreed that some "common fund"-type activities had to be undertaken and further agreed on which lawyers would perform those activities and how much they would be compensated for their efforts on behalf of the group as a whole. For example, PSJ's counsel undertook to prepare the Notice of Claims Procedure and the Global PACA Trust Chart and was paid $1,000 out of the trust corpus for its efforts. See [53, ¶¶ 15, 22].

Finally, as noted above, there are insufficient funds in the trust to satisfy all of the beneficiaries' claims. An award under the common fund doctrine would further reduce the pro rata recovery to all PACA claimants. In common fund cases, the attorneys seeking reimbursement no longer act as fiduciaries for their clients, but as "claimant[s] against the fund created for the clients' benefit." *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988). Therefore, this Court must act as "the fiduciary for the fund's beneficiaries and must carefully monitor [any] disbursement to the attorneys." *Id.* Here, the award of attorneys' fees

out of the PACA trust certainly would be contrary to the interests of the vast majority of claimants, who already stand to recover only a small fraction of their losses.[6]

For all of these reasons, the Court declines to apply the common fund doctrine in this case because doing so would not be in the interests of justice. See *Hall v. Cole*, 412 U.S. 1, 4-5 (1973) ("federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require").[7]

## III. Conclusion

For the foregoing reasons, the PSJ Plaintiffs' motion for fees and costs [150] and the Sato Plaintiffs' limited motion for reimbursement of attorney's fees and costs [166] are respectfully denied.

Dated: February 2, 2010

Robert M. Dow, Jr.
United States District Judge

---

[6] Even if no attorneys' fees are awarded out of the PACA trust, it appears that trust claimants can expect to recover, at best, approximately twenty-five cents on the dollar.

[7] The Court's decision not to award "common fund" fees in this case is reinforced by its detailed examination of the fees requested by the PSJ Plaintiffs (and requested contingently by the Sato Plaintiffs). On the basis of that examination, the Court concludes that most activities for which "common fund" reimbursement has been sought would not qualify in any event. For example, counsel for the PSJ Plaintiffs seek reimbursement for various tasks undertaken before the two cases were consolidated, including the drafting of the complaint and preparing the application for a temporary restraining order and supporting papers. As noted above, the PSJ Plaintiffs filed suit against Defendants after the Sato Plaintiffs. Therefore, the PSJ Plaintiffs' attorneys' work preparing a complaint and TRO at least arguably was redundant, as the PSJ Plaintiffs could have intervened in the earlier-filed Sato case. The PSJ Plaintiffs also seek reimbursement of fees related to the drafting of a motion for default judgment [docket no. 09-CV-737, 33], which they eventually withdrew. The Court fails to see, and the PSJ Plaintiffs have failed to demonstrate, how this unsuccessful motion led to the availability of funds in the PACA trust account. Based on the Court's analysis of the fees requested, if the circumstances of this case warranted "common fund" recovery – *e.g.*, if there were a smaller gap between the amount of the valid claims and the sum gathered in the trust – the actual recovery for "common fund" activities would be rather small.