# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SATO & Co., LLC, et al., <br><br> Plaintiff, <br><br> v. <br><br> S&M PRODUCE, INC., et al., <br><br> Defendants. <br><br> PRIDE OF SAN JUAN, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> S&M PRODUCE, INC., et al., <br><br> Defendants. | CIVIL ACTION (CONSOLIDATED FOR ALL PURPOSES WITH Case No. 09-cv-0737 (termed)) <br><br> Case No. 08-cv-7352 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Plaintiffs Pride of San Juan, Inc., Classic Salads, LLC, Dayoub Marketing, Inc., Fru-Veg Marketing, Inc., Lakeside Produce, Inc., Natural Forest, Inc., Ruby Robinson Co., Inc., The Kinoko Company, The Mandolini Company, Inc., and Seashore West, Inc.'s (collectively the "PSJ Plaintiffs") Motion To Determine Validity Of Claims [138] and Plaintiffs Sato & Co., LLC, The Garlic Company, Champ Produce, Inc., and Royal Rose, LLC's (collectively the "Sato Plaintiffs") response [142]. As the parties note in those pleadings, the Sato Plaintiffs and S&M Produce, Inc. ("S&M") and its principals Donald J. Mided, and Lance K. Mided (collectively "Defendants") have filed objections to certain PACA trust claims (docket entries [124] and [123] respectively). Most of the PACA claimants have responded to those objections (see docket entries [130], [131], [135], and [136]).

## I. Background

This case arises out of the Perishable Agricultural Commodities Act of 1930 (PACA"), 7 U.S.C. § 499a *et seq.*, which was enacted to protect sellers of perishable agricultural commodities from unfair conduct by buyers of such commodities, including failure to pay promptly and fully for produce ordered. PACA creates a statutory trust in favor of sellers in produce sold to buyers (*e.g.*, grocery stores and certain agents), under which the buyer holds the produce and any proceeds and receivables from the produce in trust for the benefit of the seller. 7 U.S.C. § 499e(c)(2). In this case, all Plaintiffs and claimants sold perishable agricultural commodities to Defendant S&M Produce, Inc. ("S&M"), and S&M failed to pay for that produce.

On March 17, 2009, this Court entered a Consent Injunction and Order for Establishing PACA Trust Claims Procedure (the "Claims Procedure") [53]. Pursuant to the Claims Procedure, creditors claiming PACA trust rights against S&M and seeking to share in a distribution of the PACA trust assets filed PACA trust claims with this Court. On May 15, 2009, the Sato Plaintiffs [124] and the Defendants [123] filed objections to the PACA trust claims. Both the Sato Plaintiffs and the Defendants object to certain specific claims made by the various claimants, as well as to the claims for attorneys' fees submitted as part of the PACA claims. The Sato Plaintiffs challenge only the reasonableness of the attorneys' fees claimed by the other claimants, while Defendants challenge both the claimants' entitlement to attorneys' fees as a threshold matter, as well as the reasonableness of the claimed fees.

**III.    Analysis**

    **A.    Specific Objections**

        **1.    Champ Produce**

Defendants argue that there is no basis for Champ Produce Inc.'s claim [102] for interest. Champ responds [136] that it is entitled to 5% interest under the Illinois Interest Act, 815 ILCS 205/2, which provides:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

Champ does not cite any cases applying the Act in a PACA case, nor has the Court's own research identified such a case. However, both the Second and Ninth Circuits, as well as various district courts, have held that "a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary." *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1226 (9th Cir. 2002); see also *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071-72 (2nd Cir. 1995) (holding that district court has broad discretion to fashion prejudgment interest award to PACA claimants). In *Endico*, the district court had awarded prejudgment interest at a rate of 6.09%, the Federal Statutory Interest Rate (28 U.S.C. § 1961). 67 F.3d at 1072. On appeal, the PACA claimants argued that the district court should have used the New York statutory 9% rate. *Id.* The Second Circuit found that using the Federal Statutory Rate was not an abuse of discretion because the claims in the case were "purely a product of a federal statute." *Id.*

Only one court in this district has addressed the availability of prejudgment interest under PACA. See *Weis-Buy Services, Inc. v. Roncone*, 1998 WL 30702 (N.D. Ill. Jan. 26, 1998). Following the holding in *Endico*, the court held that "[p]rejudgment interest is an appropriate remedy to make the plaintiffs who prevail on a PACA action whole," although the court did not determine the appropriate rate of interest. 1998 WL 30702, at *4. However, that decision subsequently was reversed by the Seventh Circuit in *Greg Orchards & Produce, Inc. v. Roncone*, 180 F.3d 888 (7th Cir. 1999). In that case, the Seventh Circuit expressly declined "to rule on the propriety of the district court's award of prejudgment interest." 180 F.3d at 892.

Taking into account all of the decisions cited above, as well as the statute and its purposes, the Court concludes that the Seventh Circuit likely would agree with its sister circuits that absent a contractual provision addressing interest, a district court, in its discretion, may order interest to be paid if such an award "is necessary to protect the interests of PACA claimants." *Middle Mountain,* 307 F.3d at 1226. The Court also agrees that any interest award should track the federal statutory rate, because the PACA rights that are being enforced are "purely a product of a federal statute." *Endico Potatoes,* 67 F.3d at 1072. However, given that each PACA claimant stands to recover on a *pro rata* basis only dimes on the dollar of principal, the Court in its discretion declines to award interest in this instance.

### 2. Concord Farms, Inc.

The Sato Plaintiffs and the Defendants contend that Concord Farms' PACA trust claims should be denied in their entirety because Concord has failed to properly preserve its PACA trust rights by: (1) not including the necessary PACA trust notice language on their invoices; and (2) failing to file either a PACA Proof of Claim or a Complaint-in-Intervention as required by ¶ 16 of the Claims Procedure [53]. Concord has filed no response to these objections.

4

The Claims Procedure provides that "claims for which an objection has been filed and served and no timely response was filed and served shall be disallowed to the extent of the objection." [53 at ¶ 21]. Moreover, as the Sato Plaintiffs assert, Concord failed to file a PACA Proof of Claim or a Complaint-in-Intervention as required by the Claims Procedure in order to preserve their PACA rights. [53 at ¶ 16]. Therefore, they have lost their rights as PACA trust creditors. For these reasons, the Court finds that Concord's claims are not valid.

### 3. Pride of San Juan

Defendants raise numerous objections to Pride of San Juan's PACA trust claim [100]. As an initial matter, Defendants object to Pride of San Juan's claim in its entirety because the invoices that Pride of San Juan submitted in support of its claim were illegible. That objection is overruled because Pride of San Juan submitted legible copies of its invoices in response to Defendants' objection. See [135, Ex. A].

In their remaining objections, Defendants argue that Pride of San Juan has failed to account for credits that they agreed to give S&M for produce that was not fit to be sold when it as delivered to S&M. Defendants maintain that S&M and Pride of San Juan had a long-term standing agreement to negotiate credits on invoices when produce sold by Pride of San Juan was bad when it was delivered to S&M. According to Defendants, S&M and Pride of San Juan would agree to waive USDA inspections where they could agree on the appropriate credit.

In support of this argument, Defendants provide copies of various invoices with handwriting on them indicating – according to Defendants – that credits were given for portions of the order. Pride of San Juan responds that it cannot confirm that the handwriting on the invoices is that of S&M managers and employees, as Defendants contend, and notes that those S&M employees have not submitted affidavits establishing that the handwritten notes on the

5

invoices are theirs. Pride of San Juan also submits its own copies of the invoices at issue, which do not reflect the claimed credits.

The Claims Procedure entered in this case requires that any objection to any PACA trust claim "set forth in detail the legal and factual basis for the objection to each invoice subject to the objection and attach any documents on which the objection is based." [53, at ¶ 18]. The Court concludes that, without supporting affidavits, Defendants have failed to set forth an adequate factual basis for their objections. Therefore, the Court concludes that the Pride of San Juan's PACA trust claims are valid.

### 4. Cooseman's

Defendants object to Cooseman's claim to the extent that it seeks $51.75 in payment for lemon leaves on the grounds that lemon leaves are not "produce" as defined by PACA. In response, Cooseman's has submitted a Declaration stating that lemon leaves are a perishable green leafy vegetable. [132]. Therefore, according to Cooseman's, they constitute produce under PACA. [131]. Section 499a(b)(4)(A) of PACA defines "perishable agricultural commodity" as "any of the following, whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character." The Court has no basis for doubting the accuracy of Cooseman's Declaration, pursuant to which lemon leaves appear to be covered as a "perishable agricultural commodity."

### 5. Worldwide Produce

Defendants object to Worldwide's claim to the extent that it seeks $30 in payment for dried apricots, arguing that dried fruit is not covered by PACA. Worldwide has not responded to Defendant's objection. Therefore, the Claims Procedure requires that Worldwide's claim be disallowed to the extent of the objection. [53 at ¶ 21]. Moreover, Defendants are correct that

6

dried fruit is not a "perishable agricultural commodity" under PACA because it is not fresh. See 7 U.S.C. § 499a(b)(4)(A) (defining "perishable agricultural commodity" as "any of the following, whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character"); *In re L. Natural Foods Corp.*, 199 B.R. 882 (Bkrtcy. E.D. Pa. 1996) (excluding dried apricots and prunes from PACA protection); *In re Meyer's Bakeries, Inc.*, 402 B.R. 314, 321 (Bkrtcy. W.D. Ark. 2009) (finding that dried cranberries are not fresh fruit within the meaning of PACA); [53, at 3] (noting that dried fruit and vegetables are not subject to the PACA Trust).

### 6. Tuchten

Defendants object to Tuchten's claim to the extent that it seeks $630.50 in payment for various dried fruits, again noting that PACA does not cover dried fruit. Tuchten concedes that dried fruit is not subject to PACA, and that a portion of its claim thus is not valid. However, Tutchen maintains that its $156 claim for blueberries is valid because those blueberries were fresh. [131]. Tuchten supports that assertion with a declaration. [133]. Tutchen's position also is consistent with the invoices, which identify the product as blueberries, not dried blueberries. Therefore, the Court finds that the $156 claim for blueberries is valid, but that the remaining $474.50 is invalid.

### 7. Pearson

The Sato Plaintiffs argue that, for a portion of its invoices, Pearson did not timely file the statutorily required notice of intent to preserve benefits on S&M, such that Pearson's claim should be reduced to $7,847.95. The relevant PACA regulation provides that a notice of intent to preserve benefits under a PACA trust is considered timely if it is given within 30 days after payment is due. 7 CFR § 46.46(f)(2). Pearson's PACA trust claim [57] and invoices indicate

7

that payment was due seven days from the date of delivery. Pearson provided Defendants with the required notice on February 5, 2009. See [57]. According to the Sato Plaintiffs, Pearson's notice is only timely for transactions dated between December 31, 2008 and January 29, 2009 (for which payment was due between January 7, 2009 and February 5, 2009). Pearson has not responded to Defendant's objection, and therefore its claim must be disallowed to the extent of the objection. [53 at ¶ 21].

### B. Attorneys' Fees

Both the Sato Plaintiffs and Defendants raise objections to the claims for attorneys' fees, which most of the claimants have included as part of their PACA claims. Defendants argue that the claimants are not entitled to attorneys' fees because they failed to provide proper documentation of the claimed fees, such that the reasonableness of those fees cannot be determined. Defendants further maintain that, regardless of the reasonableness of the claimed fees, no attorneys' fees should be allowed in this case because the PACA trust does not have sufficient assets to cover all of the asserted claims, and therefore the claimants likely will recover only a small *pro rata* percentage of their claims. According to Defendants, it would be unfair to claimants to dilute their recovery with attorney fee claims from other claimants. The Sato Plaintiffs object only to the reasonableness of the attorneys' fees claimed by other claimants.

#### 1. Entitlement to Attorneys Fees

Those claimants seeking attorneys' fees who have responded to Defendants' objections contend that they are contractually entitled to attorneys' fees based on language included on their invoices.[1] The Court has confirmed that all of these claimants have included the appropriate verbiage on their invoices.

---

[1] The following claimants filed responses to the objections regarding attorneys fees: Von Solkema Produce, Inc., Alamax, Inc., and Dietz & Kolodenko Co. [130]; Coosemans Chicago, Inc., Jab Produce,

PACA provides that in interstate transactions involving agricultural commodities, those commodities and their proceeds "shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until *full payment of the sums owing in connection with such transactions* has been received by such unpaid suppliers, sellers or agents." 7 U.S.C. § 499e(c)(2) (emphasis added). Based on this statutory language, three courts of appeals have held that "where the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007) (quoting 7 U.S.C. § 499e(c)(2)); see also *Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir. 2004) (stating that the language in 7 U.S.C. § 499e(c)(2) "unambiguously encompasses not only the price of commodities but also additional related expenses * * * includ[ing] attorney fees and interest that buyers and sellers have bargained for in their contracts"); *Middle Mountain Land & Produce v. Sound Commodities,* 307 F.3d 1220, 1224 (9th Cir. 2002) ("it cannot be contended seriously that interpreting PACA claims to include contractual rights to attorneys' fees and interest under the '*in connection with*' language of the statute is contrary to the statute's purpose"). Courts also have held that allowing recovery of contract-based attorneys' fees is consistent with PACA's goal "to give produce sellers a meaningful opportunity to recover full payment of the amounts due for their sales." *Country Best,* 361 F.3d at 632.

---

Inc., and Tuchten [131]; Sato, The Garlic Company, and Royal Rose [136]; Classic Salads, Dayoub Marketing, Inc., Ruby Robinson Co., Inc., Natural Forest, Inc., The Kinoko Company, The Mandolini Co., Inc., and Seashore West [135]. While Pride of San Juan, Fru-Veg, and Lakeside are parties to [135], they are not seeking contract-based attorneys' fees. Champ has withdrawn its request for attorneys' fees [136].

In *Coosemans*, *Country Best*, and *Middle Mountain*, as in the instant case, the PACA claimants based their entitlement to attorneys' fees on language included in their invoices, which they asserted created a contractual right to such an award. See *Coosemans*, 485 F.3d at 704, *Country Best*, 361 F.3d at 631; *Middle Mountain,* 307 F.3d at 1222. The *Country Best* and *Middle Mountain* courts remanded to the district courts to determine whether the invoices created a contractual right to attorneys' fees. *Country Best,* 361 F.3d at 633; *Middle Mountain,* 307 F.3d at 1225. In *Coosemans*, the Second Circuit affirmed the district court's conclusion that the plaintiffs' invoices created an enforceable contract providing for attorneys' fees under N.Y. U.C.C. § 2-207(2). 485 F.3d at 709.

Here, the claimants argue that the attorneys' fees language on their invoices became part of their contracts with S&M pursuant to pursuant U.C.C. § 2-207(2). Illinois has adopted Section 2-207 of the U.C.C. at 810 ILCS 5/2-207. Section 2-207(2) provides that, between merchants, additional terms in an acceptance or confirmation become part of the contract unless: "(a) the offer expressly limits acceptance to the terms of the offer; (b) [the terms] materially alter [the contract]; or (c) notification of objection to [the additional terms] has already been given or is given within a reasonable time after notice of them is received." 810 ILCS 5/2-207(2). Here, the parties are merchants. Therefore, the attorneys' fee provisions contained in the claimants' invoices are part of the contracts unless one of the three exceptions noted above applies. As the parties opposing the inclusion of the attorneys' fee terms, Defendants bear the burden of proving one of the exceptions. *Comark Merchandising, Inc. v. Highland Group, Inc.*, 932 F.2d 1196, 1201 (7th Cir. 1991). Because Defendants do not even argue that one of the exceptions applies, the attorneys' fee provisions are part of the enforceable contracts between the parties.

### 2. Reasonableness of Claimed Fees

In their objections, both the Sato Plaintiffs and Defendants reserved the right to object to the reasonableness of any attorneys' fees requested by claimants. "When determining the reasonableness of attorneys' fees, a 'lodestar' analysis, which multiplies the attorneys' reasonable hourly rates by the number of hours reasonably expended, is typically the starting point." *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 793 (7th Cir. 2009). To determine an attorney's reasonable hourly rate, courts look to the "market rate" for the work performed, meaning "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-55 (7th Cir. 1999). The burden of proving the market rate is on the party seeking attorneys' fees. *Id.* at 554. "[O]nce the attorney provides evidence establishing his market rate, the burden shifts to the [opposing party] to demonstrate why a lower rate should be awarded." *Id.* at 554-55. Because "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him," an attorney's actual billing rate is "presumptively appropriate" for use as the market rate. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F.Supp.2d 931, 934 (N.D. Ill. 2009) (citations omitted).

The party seeking attorney's fees also bears the burden of proving the reasonableness of the number of hours worked. *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 518 (7th Cir. 1993). "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir. 2004). This Court has broad discretion in setting the amount of the award, including reducing the claimed hours, so long as it explains deviations from the petitioner's claimed hour. *McNabola*, 10 F.3d at 519.

In order to resolve the reasonableness challenges, the Court must assess the reasonableness of both the hourly rate and the number of hours worked on which the attorneys' fee claims are based. In response to the objections, only six claimants submitted the requisite documentation.[2] Therefore, the Court directed any claimants seeking attorneys' fees as part of their PACA claims who had not yet done so to submit documentation supporting their claimed fees by September 9, 2009. See [164]. The Court further ordered that any objection to the reasonableness of the claimed fees be filed by September 16, 2009. See [164].

No claimants filed any additional documentation supporting their claims for attorneys' fees, nor did any party file additional objections.[3] As noted above, the party seeking attorneys' fees bears the burden of proving that each element of the lodestar calculation – the hourly rate and the number of hours worked – is reasonable. Those claimants who submitted no supporting documentation plainly failed to carry their burden, and therefore their claims for attorneys' fees will be denied.[4]

Claimants Coosemans Chicago, Inc., Jab Produce, Inc., and Tuchten seek fees at a rate of $300 an hour. In support of that claimed rate, Coosemans, Jab, and Tuchten have submitted the

---

[2] Coosemans Chicago, Inc., Jab Produce, Inc., and Tuchten submitted a declaration that their attorneys' fee claims were based on a rate of $300 an hour, and also submitted documentation of the claimed hours. See [134]. Similarly, Sato, The Garlic Company, and Royal Rose identified the claimed hourly rate on which their claims were based – $350 an hour – and submitted invoices documenting the claimed hours worked. See [136]. Claimants Von Solkema Produce, Inc., Alamax, Inc., and Dietz & Kolodenko Co. identified the hourly rate but provided no documentation of the hours worked. See [130]. All other claimants provided no supporting documentation.

[3] The Sato Plaintiffs filed an unrelated limited motion for reimbursement of attorney's fees and costs [166], which the Court addresses in a separate order.

[4] Claimants who failed to file supporting documentation include: Von Solkema Produce, Inc., Alamax, Inc., Dietz & Kolodenko Co., Classic Salads, Dayoub Marketing, Inc., Ruby Robinson Co., Inc., Natural Forest, Inc., The Kinoko Company, The Mandolini Co., Inc., Seashore West, Natural Selection Foods, LLC, California Specialty Produce, Inc., Fresh King, Inc., World Wide Produce, Inc., and Pearson Food Corp.

declaration of their attorney, Mary Jean Fassett, stating that $300 per hour is her standard billing rate, that she believes it to be a fair and reasonable rate as compared to the rates charged by other attorneys of similar practice areas and tenure, and that the claimants were billed at that rate. See [134]. The claimants also provided copies of the billing statements, which reflect the $300 per hour rate. Because of the presumption that an attorney's actual billing rate is appropriate for use as the market rate, the billing statements are sufficient to shift the burden to the parties challenging the reasonableness of the rate to show that a lower rate is appropriate. No party has specifically challenged the hourly rate. And the claimed hourly rate is lower than the rate claimed by the Sato Plaintiffs. Therefore, the Court concludes that the hourly rate claimed by Coosemans, Jab, and Tuchten is reasonable.

Coosemans, Jab, and Tuchten seek $1,220 in attorneys' fees, or approximately four hours at the $300 per hour rate. As the billing statements indicate, the amount of fees the claimants are seeking is less than the amount actually incurred through April 24, 2009. No specific objections to the reasonableness of the claimed hours worked have been filed. The Court concludes that the attorneys' fees sought by Coosemans, Jab, and Tuchten are reasonable.

Sato, The Garlic Company, and Royal Rose seek $15,891.36 in attorneys' fees, at a rate of $350 per hour, and have submitted an affidavit and billing statements supporting the claimed fees. See [136]. Defendants have withdrawn their objections to the reasonableness of the attorneys' fees claimed by these claimants. See [154]. And no other party has objected to the reasonableness of these claimed fees. Therefore, the Court finds that the attorneys' fees sought by Sato, The Garlic Company, and Royal Rose are reasonable.

13

## IV. Conclusion

For the foregoing reasons, the claims are allowed as follows:

| Claimant | Docket Entry of Declaration | Total Claim | Disallowed Portion | Total Allowable Claim |
|---|---|---|---|---|
| Pride of San Juan, Inc. | 100 | $60, 146.87 | --- | $60, 146.87 |
| Classic Salads, LLC | 91 | $51, 223.07 | $10, 053.24 | $41,269.83 |
| Dayoub Marketing, Inc. | 92 | $25,252.12 | $3,875 | $21,377.12 |
| Fru-Veg Marketing, Inc. | 93 | $12,543.06 | --- | $12,543.06 |
| Lakeside Produce, Inc. | 95 | $16,390.15 | --- | $16,390.15 |
| Natural Forest, Inc. | 97 | $11,831.17 | $1,725 | $10,106.17 |
| Ruby Robinson Co., Inc. | 98 | $2,435.76 | $500 | $1,935.76 |
| The Kinoko Company | 94 | $8,077.21 | $1,175 | $6,902.21 |
| The Mandolini Company, Inc. | 96 | $1,122.28 | $200 | $922.28 |
| Seashore West, Inc. | 128 | $5,596.02 | $500 | $5,096.02 |
| Sato & Co., LLC | 105 | $61,521.13 | --- | $61,521.13 |
| The Garlic Company | 103 | $23, 292.50 | --- | $23, 292.50 |
| Champ Produce, Inc. | 102 | $63,349.88 | $1,576.83 | $61,773.05 |
| Royal Rose, LLC | 104 | $28,372.11 | --- | $28,372.11 |
| World Wide Produce | 67 | $7,520.79 | $3,030 | $4,490.79 |
| Natural Selection Foods, LLC | 82 | $10,117.95 | $1,600 | $8,517.95 |
| California Specialty Produce, Inc. | 73 | $12,165.32 | $2,000 | $10,165.32 |
| California Citrus Specialties, Inc. | 75 | $24,987.28 | --- | $24,987.28 |
| Northern Pine, Inc. | 76 | $31,404.81 | --- | $31,404.81 |
| Van Solkema Produce, Inc. | 77 | $4,812.82 | $1,109.27 | $3,703.55 |
| Alamax, Inc. d/b/a Nature's Best Garden | 78 | $2,197.22 | $550.57 | $1,646.65 |
| Dietz & Kolodenko Co. | 79 | $910.56 | $224.28 | $686.28 |
| Alpine Foragers Exchange, Inc. | 80 | $15,522.96 | --- | $15,522.96 |

| | | | | |
|---|---|---|---|---|
| JAB Produce, Inc. | 99 | $2,665.88 | --- | $2,665.88 |
| Jack Tuchten Wholesale Produce, Inc. | 101 | $1,421.96 | $474.50 | $947.46 |
| Fresh King Inc. | 108 | $17,101.98 | $2,700 | $14,401.98 |
| Coosemans Chicago, Inc. | 106 | $5,088.46 | --- | $5,088.46 |
| Pearson Food Corp. | 57 | $17,012.45 | $9,164.50 | $7,847.95 |

Dated: February 2, 2010

_____
Robert M. Dow, Jr.
United States District Judge