# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SATO & Co., LLC, et al., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> S&M PRODUCE, INC., et al., ) <br> ) <br> Defendants. ) <br> ──────────────────────────── ) <br> PRIDE OF SAN JUAN, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> S&M PRODUCE, INC., et al., ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> (CONSOLIDATED) <br> <br> Case No. 08-CV-7352 <br> <br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court is the Pride of San Juan ("PSJ") Plaintiffs'[1] second motion to clarify [195] the Court's February 2, 2010 order [173]. In the motion to clarify, the PSJ Plaintiffs contend that in its February 2, 2010 order, the Court failed to award attorneys' fees to the PSJ Plaintiffs and to claimants Sato, The Garlic Company, and Royal Rose (collectively "the Sato Plaintiffs"), despite each group having timely submitted their fee requests and supporting documentation. The motion also brings to the Court's attention the fact that the February 2, 2010 order [173] inadvertently was inconsistent in its award of interest to the parties. The February 2, 2010 order [173] is clarified and amended as follows.

---

[1] The PSJ Plaintiffs are Pride of San Juan, Inc., Classic Salads, LLC, Dayoub Marketing, Inc., Fru-Veg Marketing, Inc., Lakeside Produce, Inc., Natural Forest, Inc., Ruby Robinson Co., Inc., The Kinoko Company, The Mandolini Company, Inc., and Seashore West, Inc.

## I. Background

### A. Attorneys Fees

The PSJ Plaintiffs sought reimbursement of attorneys' fees and costs under a common fund theory [150]. The Court denied the PSJ Plaintiffs' motion for reimbursement of costs and fees under a common fund theory in a memorandum opinion and order [171] issued on February 2, 2010.

In another February 2, 2010 order [173], this Court addressed the other PACA claimants' claims for contractual attorneys' fees, to which both the Sato Plaintiffs and Defendants had raised objections. First, the Court concluded that certain claimants' invoices created a contractual right to attorneys' fees. Second, the Court addressed the reasonableness of the claimed attorneys' fees. After considering the hourly rate and the documentation regarding the hours worked, the Court concluded that the fees requested by six claimants – Coosemans Chicago, Inc., Jab Produce, Inc., Tuchten, Sato, The Garlic Company, and Royal Rose – were reasonable. Therefore, as reflected in the Court's claim award chart set forth in the order [173], the Court awarded attorneys' fees to Coosemans, Jab, and Tuchten. However, the contract-based fees awarded to Sato, The Garlic Company, and Royal Rose inadvertently were omitted from the Court's claim award chart. The chart below remedies that error.[2]

With respect to the PSJ Plaintiffs, in the February 2, 2010 order [173], the Court noted that seven of the PSJ Plaintiffs – Classic Salads, Dayoub Marketing, Inc., Ruby Robinson Co., Inc., Natural Forest, Inc., The Kinoko Company, The Mandolini Co., Inc., and Seashore West – would have been entitled to contract-based attorneys' fees had they submitted proper

---

[2] The Court's prior order [173] also erroneously awarded World Wide and Fresh King their estimated attorneys fees despite the fact that they provided no documentation. The chart below also corrects that error.

documentation demonstrating the reasonableness of the claimed the hourly rate and the number of hours worked.[3] However, the Court disallowed the PSJ Plaintiffs' requests for contract-based attorneys fees on the ground that they had failed to supply the required supporting documentation. In their second motion to clarify [195], the PSJ Plaintiffs point out that they submitted the requisite documentation in connection with their common fund motion, and request that the Court consider that documentation in connection with their request for contract-based fees.

As the Court noted in its April 14, 2010 minute order [200], it would be inequitable not to consider the documentation that the PSJ Plaintiffs submitted in support of its request for common fund fees as providing support for an alternative request for contract-based fees. Therefore, the Court will consider the reasonableness of the request for contract-based fees asserted by the seven PSJ Plaintiffs that are entitled to such fees. Those PSJ Plaintiffs seek $17,144.29 in attorneys' fees and costs billed by two attorneys.[4] [See ex. A to 201]. Defendants previously-raised a number of objections to the reasonableness of the PSJ Plaintiffs' requested fees in the context of the common fund motion. See [155]. In particular, Defendants object to the PSJ Plaintiffs' attorneys' fee request on a number of grounds: (1) the claimed hourly rates are unreasonable; (2) the claimed hours are unreasonable, unnecessary, and did not benefit the other

---

[3] The three remaining PSJ Plaintiffs – Pride of San Juan, Fru-Veg, and Lakeside – are not entitled to and do not request contract-based attorneys' fees.

[4] Counsel for the PSJ Plaintiffs have submitted documentation for a total of $34,576.39 in fees and costs. The $17,144.29 in fees and costs that they seek to recover represents the *pro rata* share of that total for the seven PSJ Plaintiffs that are entitled to contract-based attorneys' fees. According to the PSJ Plaintiffs' latest submission, they are entitled to 49.58% of the allowed fees and costs. [See ex. A to 201]. In an earlier submission, it appears that the PSJ Plaintiffs claimed a *pro rata* share of 56.49% ($19,532.30 based on the $34,576.39 figure). See [195, 197]. The reason for that apparent discrepancy is not entirely clear, but the Court treats the more recent of the two submissions as the operative claim on behalf of the eligible PSJ Plaintiffs.

beneficiaries; and (3) the costs are not sufficiently-documented. The Court addresses Defendants' objections in Section II.A below.

**B.     Interest**

On the basis of the circumstances as the Court understood them at the time of its February 2, 2010 order [173], the Court exercised its discretion to refuse to award statutory interest to Champ Produce. The Court reasoned that awarding such interest would be inequitable, given that each PACA claimant stands to recover only a *pro rata* share of its claims. Because Defendants objected only to Champ's claim for statutory interest, the Court erroneously believed that Champ was the only claimant seeking prejudgment interest at the Illinois statutory rate. The Court also noted that, if it were to award prejudgment interest, it would be inclined to do so at the federal statutory rate. It has since come to the Court's attention that its order was not consistent in regard to the award of interest. In particular, eight other claimants – Natural Selection, California Specialty Produce, California Citrus, Alamax, Alpine Foragers, PSJ, Lakeside, and Seashore – included prejudgment interest at the Illinois statutory rate in their total claims. The Court awarded that interest because no parties objected. The Court's order also awarded 17 claimants contractual interest at rates that far exceed the Illinois statutory rate of 5%. Finally, the Court did not award interest through the date of its order, as PSJ Plaintiffs argue it should have. The Court clarifies its order with respect to the award of prejudgment interest in Section II.B. below.

## II. Analysis

### A. Reasonableness of Counsel for PSJ Plaintiffs' Fee Petition

#### 1. General Principles

"When determining the reasonableness of attorneys' fees, a 'lodestar' analysis, which multiplies the attorneys' reasonable hourly rates by the number of hours reasonably expended, is typically the starting point." *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 793 (7th Cir. 2009). To determine an attorney's reasonable hourly rate, courts look to the "market rate" for the work performed, meaning "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-55 (7th Cir. 1999). The burden of proving the market rate is on the party seeking attorneys' fees. *Id.* at 554. "[O]nce the attorney provides evidence establishing his market rate, the burden shifts to the [opposing party] to demonstrate why a lower rate should be awarded." *Id.* at 554-55. Because "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him," an attorney's actual billing rate is "presumptively appropriate" for use as the market rate. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) (citations omitted).

The party seeking attorney's fees also bears the burden of proving the reasonableness of the number of hours worked. *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 518 (7th Cir. 1993). "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir. 2004). The Court also must disallow "hours spent on tasks that would not normally be billed to a paying client, [and] those hours expended by counsel on tasks that are easily delegable to non-professional assistance."

*Spegon*, 175 F.3d at 553 (internal citations omitted). This Court has broad discretion in setting the amount of the award, including reducing the claimed hours, so long as it explains deviations from the petitioner's claimed hours. *McNabola*, 10 F.3d at 519.

2. **Reasonableness of the Hourly Rates**

The PSJ Plaintiffs seek fees at a rate of $325 per hour for the partner on the case, Michael J. Keaton ("Keaton"), and $215 an hour for the associate on the case, Jonathan Ksiazek. In its February 2, 2010 order [173], this Court found hourly billing rates of $300 per hour and $350 per hour to be reasonable. For the reasons stated in that order, the Court finds that the hourly rates claimed by counsel for the PSJ Plaintiffs are reasonable.

3. **Reasonableness of Number of Hours Billed**

Counsel for Defendants conceded in open court that, in assessing the PSJ Plaintiff's request for contract-based fees, the Court should apply a reasonableness review, which necessarily is a much less searching review than would have been required in the context of a common fund request.[5] Consequently, a large portion of Defendants' objections to the PSJ Plaintiff's claimed fees and costs – which were asserted in the context of a common fund request – no longer are relevant. For example, Defendants object to numerous billing entries on the

---

[5] A party that helps to create a common fund is entitled to reimbursement out of the common fund only for those hours worked that led "directly" to "the availability of funds" in the PACA trust (from which all PACA creditors will benefit). *In re Milton Poulos, Inc.*, 947 F.2d 1351, 1353 (9th Cir. 1991). Furthermore, under the common fund doctrine, reimbursement for attorney's fees from the common fund is appropriate only where the Court can identify the PACA claimants who actually benefited from a particular action such that the costs of that action can be shifted "with some exactitude" to its beneficiaries. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 265 n. 39 (1975); see also *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 157 (7th Cir. 1993) (application of common fund doctrine "is most appropriate when (1) the class of persons benefitted by the lawsuit is small and easily identifiable, (2) the benefits can be traced with some accuracy, and (3) the costs of the litigation can be shifted accurately to those who profit by it"). Finally, the award of attorneys' fees out of a common fund is warranted only to prevent unjust enrichment of the other PACA beneficiaries.

ground that the work did not benefit other trust creditors, which no longer is a relevant consideration.[6]

### a. Secretarial/Clerical/Non-Legal Work

Counsel for the PSJ Plaintiffs' fee petition includes hours expended by counsel on clerical and non-legal work "that [was] easily delegable to non-professional assistance." *Spegon,* 175 F.3d at 553. Seventh Circuit precedent requires this Court to disallow those hours. *Id.*

Specifically, on February 12, 2009, counsel for the PSJ Plaintiffs[7] billed .6 hour (at $235 per hour) preparing summonses, and Mr. Keaton spent .2 hour (at $325 per hour) revising those summonses. Because that work is clerical, those hours are disallowed. See *First Colonial Trust Co. v. H.S. Crocker Co., Inc.*, 1994 WL 49025, at *16 (N.D. Ill. Feb. 15, 1994) (reducing hourly rate for "the preparation of the summons" on the grounds that they "could have been prepared by a paralegal"); *Thomas ex rel. Smith v. Sheahan*, 556 F. Supp. 2d 861, 890 (N.D. Ill. 2008) (disallowing time spent drafting summons as clerical).

Also on February 12, 2009, counsel for the PSJ Plaintiffs[8] billed 1.8 hours (at $235 per hour) for preparing documents for service and filing. Again, that is clerical work and thus the claimed hours are disallowed.

Mr. Keaton billed .4 hour (at $325 per hour) for a conference with the process server on February 19, 2009. That task was easily delegable to non-professional assistance, and therefore

---

[6] In view of the disjunction between the common fund context in which the objections were made and the "reasonableness" standard that the parties agree should be applied, the Court need not address each and every one of the numerous objections raised in Defendants' written submission. Rather, the Court will address only those objections that are relevant to a "reasonableness" analysis.

[7] It is unclear which attorney – Mr. Keaton or Mr. Ksiazek – billed this time as the billing rate ($235) does not correspond to either of the attorneys' billing rates, which are $325 per hour and $215 per hour respectively.

[8] Again, the claimed billing rate does not match that of either of the two attorneys who, according to counsel for the PSJ Plaintiffs, handled all matters in this litigation.

the time is disallowed. See *Williams v. Z.D. Masonry, Corp.*, 2009 WL 383614, at *3 (N.D. Ill. Feb. 17, 2009) (disallowing time spent working with process server as clerical).

In sum, a total of $759 in fees will be deducted from the fee award sought by counsel for the PSJ Plaintiffs on the grounds that certain entries are for uncompensable clerical work.

### b. Excessive Billing

Although the Court overrules many of the objections lodged by Defendants, the Court agrees that some of the hours billed by counsel for the PSJ Plaintiffs are excessive.

In the March 13, 2009 invoice, Mr. Keaton charged 1.5 hours (at $325 per hour) for a conference with the Court Clerk "to advise of TRO package being filed and agenda for emergency hearing with judge." That time entry is manifestly excessive and thus unreasonable. Between March and April, counsel for the PSJ Plaintiffs billed another 1.5 hours and $454.50 to various conferences with the Court Clerk. For example, on March 2, 2009, Mr. Ksiazek spent 18 minutes discussing the supplemental order to the TRO with this Court's clerk. Again, the Court finds the amount of time billed to be excessive, particularly in light of the fact that communications with the Court's Clerk could be considered clerical. See *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 553 (7th Cir.1999) (upholding the district court's finding that tasks such as in conferences with a paralegal regarding the paralegal's communications with the court's minute clerk constituted unrecoverable administrative tasks). The Court reduces the number of hours spent conferencing with the Court Clerk to 1 hour, and charges that time at the lower rate of $215 per hour. Therefore, $727 is deducted from the fee request.

On February 24, 2009, Mr. Ksiazek billed 2.3 hours (at $215 per hour) preparing a one and a half page agreed supplemental order "to establish the manner of disposal or sale of Defendant's inventory of perishable agricultural commodities" and other assets and providing

that Defendants could remove from the S&M location the company's books and records. In the Court's judgment, spending 2.3 hours drafting a short agreed order is too much. The amount of time billed to the initial drafting is reduced to 1.5 hours.[9] Consequently, another $172 in fees will be deducted from the fee award.

Mr. Keaton billed a total of 5.8 hours and $1,885 to conferences with *pro se* claimants. The Court concludes that a paying client should not be billed for such discussions with non-clients absent a showing that the client benefitted from the conversation, which has not been made. Therefore, the Court disallows that time, and deducts another $1,885 from the PSJ Plaintiffs' counsel's requested fees. See *Pasternak v. Radek*, 2008 WL 2788551, at *9 (N.D. Ill. April 3, 2008) (disallowing hours spent on non-clients).

Mr. Keaton billed a total of 13.3 hours and $4,322.50 for drafting, reviewing, and revising the claims procedure order. That does not include the additional time that PSJ's counsel spent conferencing with co-counsel regarding the claims procedure order in an effort to resolve disputes between the parties. While the Court appreciates the parties' efforts to reach a global agreement on the terms of a proposed Consent Injunction and PACA claims procedure, 13.3 hours spent simply on drafting and revising the document – wholly apart for the time spent negotiating with the other parties – is not reasonable. The amount of time billed for this task is particularly unreasonable in light of the fact that firms with a significant PACA practice – like Mr. Keaton's – have standard claims procedure documents. Therefore, the initial drafting of the claims procedure document should not have been time consuming. The number of hours billed

---

[9] Counsel for the PSJ Plaintiffs billed another .5 hours at $325 per hour to revising the supplemental order to incorporate suggestions from co-creditor counsel, as well as .4 hours at $325 per hour to obtain consent of all counsel to the final agreed supplemental order. The Court declines to reduce these time entries, as cooperation between counsel increases judicial efficiency and ought to be encouraged.

to drafting, reviewing, and revising the claims procedure order is reduced to 8 hours, and another $1,722.50 in fees are deducted from the fee award.

### c. Billing Falling Under Flat Rate

Counsel for the PSJ Plaintiffs concede that they failed to redact several time entries for tasks that they agreed to undertake for a set fee. In particular, counsel for the PSJ Plaintiffs agreed to "notify all potential PACA trust claimants of the PACA trust claim procedure set forth" in Consent Injunction and Order for Establishing PACA Trust Claims Procedure [53] entered by the Court on March 17, 2009 for $500.00. See [53] at ¶ 15. According to the Claims Procedure, the parties agreed that $500 constituted "reasonable compensation for all costs, including without limitation, postage charges and attorneys' fees, incurred by Counsel for Pride of San Juan in connection with sending the notice." *Id.* However, the fee petition includes time entries related to the issuance of claims procedure notices. In particular, Mr. Ksiazek billed .3 hours (at $215 per hour) to preparing a list of PACA creditors requiring notice, and Mr. Keaton billed .4 hours (at $325 per hour) to revise and amend a cover letter to the potential claimants. Mr. Keaton also billed .4 hours to reviewing the results of all certified mailings for the claims chart. In view of the agreement set forth in paragraph 15 of the Claims Procedure, counsel for the PSJ Plaintiffs should not have billed their paying clients separately for these tasks. Therefore, the time entries discussed above are disallowed, and another $324.50 is deducted from the claimed fees.[10]

Defendants contend that counsel for the PSJ Plaintiffs also have included time entries related to the collection of the Defendants' accounts receivable. In particular, on March 4, 2009,

---

[10] As discussed below, the PSJ Plaintiffs also seek reimbursement of the $458.27 that they spent on postage for the claims procedure notices. That expense also is covered by the agreed upon flat fee and thus the request for reimbursement will not be allowed.

Mr. Ksiazek billed 1.5 hours (at $215 per hour) for reviewing Defendants' list of accounts receivable and locating phone numbers and addresses. On March 4th and 6th, Mr. Keaton billed .5 hours and 1.3 hours respectively to reviewing Defendants' accounts receivable. According to Defendants, these hours "ought to be included in the arrangements made for collection of the ARs on a contingent fee basis" and therefore "should have been omitted entirely because Keaton has agreed and obtained authority to collect the ARs under conditions he requested." [155, at 27]. Defendants are referring to the Court's June 12, 2009 order [146], which granted counsel for the PSJ Plaintiffs authority to recover 20 identified accounts receivable, and ordered that any and all recoveries on those 20 receivables be divided 33.3% to counsel for the PSJ Plaintiffs and 66.7% to the registry to fund pro-rata distributions to all PACA claimants. Plaintiffs state that they "are not seeking compensation for collecting the Defendants' accounts receivable." [159, 4] It appears to the Court that the time entries at issue, which predate the entry of the June 12th, 2009 order, are related to the identification, rather than the collection, of Defendants' accounts receivable. Therefore, the time entries are allowed.

In sum, for the reasons stated above, $5,590.00 in claimed attorneys' fees are disallowed.

### d. Costs

The contractual provisions at issue provide that the "Buyer [Defendants] agrees to pay all costs of collection, including attorneys' fees." Therefore, counsel for the PSJ Plaintiffs are entitled to reasonable costs, in addition to attorneys fees. See *Kaiser v. MEPC American Properties, Inc.*, 518 N.E.2d 424, 427 (Ill. App. Ct. 1st Dist.1987) (even where contract provides for attorney fees and costs, only reasonable fees will be allowed); *Manufacturers Life Ins. Co. (U.S.A.) v. Mascon Information Technologies Ltd.*, 270 F. Supp. 2d 1009 (N.D. Ill. 2003) (where contract provided for award of fees, postponing decision on reasonableness of attorneys' fees and

costs until the party seeking those fees filed time records and other itemized costs). Parties seeking reimbursement "must present enough supporting documentation to allow the Court to determine whether specific costs are reasonable and necessary." *Fischer v. Avanade, Inc.*, 2007 WL 3232494, at *1 (N.D. Ill. Oct. 31, 2007). The Court "may reduce or deny reimbursement for any expenses that are not properly documented." *Fruit Belt Canning Co., Inc. v. Heinemann's Inc.*, 2006 WL 1430801, at *2 (N.D. Ill. May 17, 2006). The PSJ Plaintiffs request $3,195.89 in costs. Defendants object that the costs are not adequately documented. At the time that Defendants filed their objections they were correct – the costs were not sufficiently supported with documentary evidence. Indeed, counsel for the PSJ Plaintiffs had filed no supporting documentation at that time. However, in response to Defendants' objections, counsel for the PSJ Plaintiffs submitted supporting documentation. Therefore, many of the claimed costs now are adequately documented and, in the Court's judgment, are reasonable. Those claimed costs that are not reasonable are addressed below.

### 1. March 13, 2009 Billing Statement

Counsel for the PSJ Plaintiffs request reimbursement for $242 in travel expenses incurred in connection with attending the February 13, 2009 TRO hearing, the February 19, 2009 preliminary injunction hearing, and the February 24, 2009 status hearing. In support of these costs, the PSJ Plaintiffs have submitted three expense reports and parking receipts for February 19, 2009 and February 24, 2009. For each court appearance, counsel for the PSJ Plaintiffs seek to recover for parking, mileage (at a rate of $1 per mile), and dry cleaning costs. Counsel for the PSJ Plaintiffs have not submitted dry cleaning receipts. Therefore, those expenses are not sufficiently documented. And, in any event, the Court does not consider counsel's dry cleaning to be a necessary expense. See *FMS, Inc. v. Volvo Const. Equipment North America, Inc.*, 2009

WL 1851136, at *3 (N.D. Ill. June 29, 2009) (disallowing cost of dry cleaning service for witnesses on the ground that it is not "necessary to the litigation"). Therefore, $42 – the cost of the dry cleaning – is deducted from the claimed costs.

Counsel for the PSJ Plaintiffs also seek reimbursement for $691.20 in copy expenses. These expenses are not recoverable for a number of reasons. First, the PSJ Plaintiffs have submitted no invoice or bill for these charges, and therefore they are not adequately documented. Moreover, the billing statement does not indicate how much was charged per page. Therefore, the Court cannot determine whether the request is reasonable. See *Bodum USA, Inc. v. La Cafetiere, Inc*., 2009 WL 1702808, at *4 (N.D. Ill. June 17, 2009) ("Courts in this circuit have found rates up to 20¢ per page to be reasonable," and will reduce the per-page rate for copies where the claimed rate exceeds that charged by outside copy shops). Finally, the PSJ Plaintiffs fail to identify what documents were copied, making it impossible to discern whether these costs were reasonably necessary. See *American Automotive Accessories v. Fishman*, 991 F. Supp. 995, 997 (N.D. Ill. 1995) (denying request for copying costs where documentation submitted did not "describe what was copied * * * [or] the costs per page or the number of the copies"); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 643 (7th Cir. 1991) (party seeking copying costs is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," but must "provide the best breakdown obtainable from retained records"). Accordingly, the PSJ Plaintiffs' request for reimbursement of these copy expenses is denied.

### 2. April 21, 2009 Billing Statement

Counsel for the PSJ Plaintiffs request $71 in expenses incurred traveling to the March 11, 2009 hearing on the PACA claims procedure. Again, counsel for PSJ Plaintiffs seeks to recover

for the cost of his dry cleaning. For the reason stated above, that amount – $15 – is deducted from the claimed amount.

As referenced above, counsel for the PSJ Plaintiffs request reimbursement of $458.27 expended on postage. The documentation counsel for the PSJ Plaintiffs have submitted verifying these costs simply lists the names and addresses of various companies to which the PSJ Plaintiffs' attorneys apparently mailed documents, the date on which the documents were sent, and the cost of postage associated with each mailing. The date for each mailing is March 19, 2009. According to the billing statements, counsel for the PSJ Plaintiffs sent out claims packages to potential trust claimants on March 19, 2009. Thus, it appears that the PSJ Plaintiffs are seeking reimbursement for the postage costs incurred sending out those claims packages. However, pursuant to paragraph 15 of the Claims Procedure [53], counsel for the PSJ Plaintiffs was required to notify all potential PACA trust claimants of the PACA Trust claim procedure by registered or certified mail. And the parties expressly agreed that $500 was reasonable compensation for all costs incurred in connection with sending the notice, including postage charges. [53, ¶ 15]. Therefore, counsel for the PSJ Plaintiffs may not be reimbursed for these costs, and the request for postage is denied.

Counsel for the PSJ Plaintiffs also seek reimbursement for another $741.90 in copy expenses. Like the copying costs discussed above, these expenses are not recoverable because they are not adequately documented, and therefore the Court cannot determine whether these costs were reasonable or necessary.

### 3. June 23, 2009 Billing Statement

Finally, counsel for the PSJ Plaintiffs request another $78.30 for copying. Again, the copying expenses are not recoverable because they are not adequately documented, and therefore the Court cannot determine whether these costs were reasonable or necessary.

\* \* \*

In sum, the Court deducts $2,026.67 in costs from counsel for the PSJ Plaintiffs' claimed fees and costs, in addition to the $5,590.00 in fees disallowed above. Therefore, a total of $7,616.67 is deducted from the PSJ Plaintiffs' total amount of documented fees – $34,576.39. Put another way, the PSJ Plaintiffs have demonstrated that $26,959.72 of their total attorneys' fees and costs are reasonable. However, as discussed above, because only seven of the ten PSJ Plaintiffs are entitled to attorneys fees, their counsel can recover only a percentage of that $26,959.72. That percentage is either 49.58% or 56.49%, depending on which of the PSJ Plaintiffs' submissions is correct.

This is not the first time that disparities in submissions by the PSJ Plaintiffs have caused confusion regarding their requested fees, and the Court already has given PSJ Plaintiffs one opportunity to clarify their request for fees. See [200]. In response, the PSJ Plaintiffs filed a Supplemental Filing to Clarify Calculation of Claims [201]. It is that document that indicates that the PSJ Plaintiffs are entitled to 49.58% of the total allowed fees and costs. The Court will treat the latest submission, which the PSJ Plaintiffs filed in order to clarify their position, as the correct one. Therefore, the Court concludes that PSJ Plaintiffs are entitled to $13,366.63 in fees and costs.

B.  Interest

In light of the developments discussed above, the Court revises its February 2nd order [173] to award Champ prejudgment interest. Contrary to the PSJ Plaintiffs' claims, the award of prejudgment interest in the PACA context is not mandatory, nor is the Court required to use the Illinois statutory rate. As the Court explained in its initial order, the question of whether to award prejudgment interest under PACA absent contractual right, as well as the proper rate of interest, is left to the discretion of the court. See *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1226 (9th Cir. 2002) (holding that "a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary"); see also *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071-72 (2nd Cir. 1995) (holding that district court has broad discretion to fashion prejudgment interest award to PACA claimants, and holding that the district court did not abuse its discretion in awarding prejudgment interest at the federal statutory interest rate as opposed to the higher New York statutory rate); *Fresh Kist Produce, LLC v. Choi Corp., Inc*., 251 F.Supp.2d 138 (D. D.C. March 10, 2003); *In re Southland + Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *Ger-Nis Intern., LLC v. FJB, Inc*., 2008 WL 2704384, at *17 (S.D.N.Y. July 3, 2008); *May Produce Co., Inc. v. East West Imports, Inc*., 2009 WL 4884154, at *2 (N.D. Tex. Dec. 15, 2009). As noted above, when the Court issued its February 2, 2010 order [173], it was under the misapprehension that Champ was the only claimant seeking prejudgment interest. Based in large part on that misunderstanding, as well as on the fact that each PACA claimant stands to recover only a *pro rata* share of its claims, the Court concluded that it would be inequitable to award prejudgment

interest to Champ alone. The Court also noted that, if it were to award prejudgment interest, it would be inclined to do so at the federal statutory rate.

However, upon reconsideration in light of the fact that most claimants are entitled to contractual interest, the Court concludes that the award of statutory interest would not be inequitable. Therefore, statutory prejudgment interest is awarded to all claimants seeking it.[11]

With respect to the proper interest rate, the parties appear to have contemplated in their contracts the use of the state interest rate to calculate prejudgment interest. In order not to disrupt the parties' expectations, the Court concludes that use of the Illinois rate of 5% interest is appropriate. See 815 ILCS 205/2.

Finally, the Court must determine the date through which interest should be calculated. Generally, prejudgment interest is awarded through the date of judgment. See, *e.g.*, *Cement Division, Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1117 (7th Cir. 1998) ("the very name 'prejudgment' interest strongly suggests that the relevant date is a judgment date"). The Court sees no reason to deviate from that general rule here. The complications that have arisen in unpacking all of the issues related to the parties' claims do not change the fact that the claimants have been without access to the funds for the duration of the litigation. In order to effectuate the purpose of prejudgment interest – that is, making the claimants whole – the Court awards prejudgment interest at the Illinois statutory rate through the date of judgment. The Court will enter judgment in this matter on September 17, 2010. Each claimant is directed to calculate the interest that it is due (at either the Illinois statutory rate of 5% or the proper contractual rate) through September 17, 2010, and to file a short document advising the Court (and counsel for Defendants) of the appropriate amount by September 1, 2010. Defendants are

---

[11] The claimants seeking statutory prejudgment interest include: Pride of San Juan, Lakeside Produce, Seashore West, Natural Selection Foods, California Specialty Produce, California Citrus Specialties, Alamax, Alpine Foragers.

given until September 7, 2010 to lodge any objections to any of the proposed interest calculations.

## IV. Conclusion

For the foregoing reasons, the PSJ Plaintiffs are awarded $13,366.63 in attorneys' fees and costs. The claims are allowed as revised below. On September 17, 2010, the Court will issue a final chart setting forth the total allowable claim for each claimant, and will enter judgment on those amounts.[12]

| Claimant | Principal Amt. of Debt | Contract Interest | Statutory Interest | Atty. Fees and Costs Allowed[13] | USDA Filing Fee per Federal Law | Disallowed Portion of Principal | Total Claim Allowed |
|---|---|---|---|---|---|---|---|
| Pride of San Juan, Inc. | $59,014.13 | --- | | --- | --- | --- | |
| Classic Salads, LLC | $37,354 | | --- | | --- | $10,053.24 | |
| Dayoub Marketing, Inc. | $17,864.66 | | --- | | --- | $3,875 | |

---

[12] Also pending before the Court are the PSJ Plaintiffs' Motion for Entry of Judgment Against Defendant S&M Produce, Inc. and for Disbursement of Registry Funds [191] and the PSJ Plaintiffs' Motion for Entry of Judgments for Pride of San Juan Plaintiffs Against Defendant S&M Produce, Inc. [210]. In each motion, the PSJ Plaintiffs ask this Court to enter judgment in their favor against the corporate defendant, S&M Produce, Inc. In light of the Court's intention to enter judgment on September 17, 2010, after each claimant calculates and submits the amount of prejudgment interest to which it is entitled, the PSJ Plaintiffs' motions [191, 210] are denied without prejudice.

[13] While the Court concludes that seven of the PSJ Plaintiffs – Classic Salads, Dayoub Marketing, Inc., Ruby Robinson Co., Inc., Natural Forest, Inc., The Kinoko Company, The Mandolini Co., Inc., and Seashore West – are entitled to a total of $13,366.63 in attorneys' fees and costs, the Court has not apportioned that amount between the seven claimants. Therefore, the chart does not set forth an amount of attorneys' fees and costs allowed for those seven claimants despite the fact that the Court has concluded that collectively they are entitled to a total of $13,366.63 in attorneys' fees and costs.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Fru-Veg Marketing, Inc. | $12,007.80 | --- | Interest pursuant to PACA default order award: $101.66 | --- | $500 | --- | |
| Lakeside Produce, Inc. | $15,753 | --- | | --- | $100 | --- | |
| Natural Forest, Inc. | $9,440.30 | | --- | | --- | $1,725 | |
| Ruby Robinson Co., Inc. | $1,844 | | --- | | --- | $500 | |
| The Kinoko Company | $6,529 | | --- | | --- | $1,175 | |
| The Mandolini Company, Inc. | $883.50 | | --- | | --- | $200 | |
| Seashore West, Inc. | $4,262.25 | --- | | | --- | $500 | |
| Sato & Co., LLC | $59, 915.75 | | --- | $8,716.86 | --- | --- | |
| The Garlic Company | $23,292.50 | | --- | $3,388.23 | --- | --- | |
| Champ Produce, Inc. | $61,773.05 | --- | | --- | --- | $1,576.83 | |
| Royal Rose, LLC | $26,024.80 | | --- | $3,786.26 | --- | --- | |
| World Wide Produce | $4,167.50 | | --- | --- | --- | $3,030 | |
| Natural Selection Foods, LLC | $8,041.85 | --- | | --- | --- | $1,600 | |
| California Specialty Produce, Inc. | $10,019 | --- | | --- | --- | $2,000 | |
| California Citrus Specialties, Inc. | $24,598 | --- | | --- | --- | --- | |
| Northern Pine, Inc. | $29,351 | | --- | --- | --- | --- | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Van Solkema Produce, Inc. | $3,264 | | --- | --- | --- | $1,109.27 |
| Alamax, Inc. d/b/a Nature's Best Garden | $1,621.64 | --- | | --- | --- | $550.57 |
| Dietz & Kolodenko Co. | $657.50 | | --- | --- | --- | $224.28 |
| Alpine Foragers Exchange, Inc. | $15,101.75 | --- | | --- | --- | --- |
| JAB Produce, Inc. | $2,253.50 | | --- | $305.18 | --- | --- |
| Jack Tuchten Wholesale Produce, Inc. | $1,203 | | --- | $162.90 | --- | $474.50 |
| Fresh King Inc. | $13,599 | | --- | --- | --- | $2,700 |
| Coosemans Chicago, Inc. | $4,186.75 | | --- | $746.92 | --- | --- |
| Pearson Food Corp. | $17,012.45 | --- | --- | --- | --- | $9,164.50 |

Dated: August 16, 2010

_____
Robert M. Dow, Jr.
United States District Judge