# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SATO & Co., LLC, et al., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> S&M PRODUCE, INC., et al., ) <br> ) <br> Defendants. ) <br> ——————————————————— ) <br> PRIDE OF SAN JUAN, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> S&M PRODUCE, INC., et al., ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> (CONSOLIDATED FOR ALL PURPOSES WITH Case No. 09-cv-0737 (termed)) <br><br> Case No. 08-cv-7352 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are two motions for summary judgment, one filed by Plaintiffs Pride of San Juan, Inc., Classic Salads, LLC, Dayoub Marketing, Inc., Fru-Veg Marketing, Inc., Lakeside Produce, Inc., Natural Forest, Inc., Ruby Robinson Co., Inc., The Kinoko Company, The Mandolini Company, Inc., and Seashore West, Inc.'s (collectively the "PSJ Plaintiffs") [252] and the other by Defendant Donald J. Mided [268]. The PSJ Plaintiffs seek a judgment against individual Defendant Donald J. Mided in the same amount as the judgment previously entered by the Court against corporate Defendant S&M Produce, Inc. Defendant Mided has moved for summary judgment against Plaintiff Pearson Food Corporation and Intervenor Plaintiff World Wide Produce, Inc. and also has filed a cross motion for summary judgment against the PSJ Plaintiffs. For the reasons set forth below, the Court denies the PSJ Plaintiffs' motion for summary judgment [252] and grants in part and denies in part Defendant's motion for

summary judgment [268]. Defendant's motion as it pertains to Pearson Food Corporation is denied as moot as its intervenor complaint does not allege a claim against Donald Mided individually. The motion as it pertains to the PSJ Plaintiffs and World Wide Produce, Inc. is granted.

I.   **Background**

This case arises out of the Perishable Agricultural Commodities Act of 1930 (PACA"), 7 U.S.C. § 499a *et seq.*, which was enacted to protect sellers of perishable agricultural commodities from unfair conduct by buyers of such commodities, including failure to pay promptly and fully for produce ordered. PACA creates a statutory trust in favor of sellers in produce sold to buyers (*e.g.*, grocery stores and certain agents), under which the buyer holds the produce and any proceeds and receivables from the produce in trust for the benefit of the seller. 7 U.S.C. § 499e(c)(2). In this case, the PSJ Plaintiffs and Intervenor Plaintiff World Wide Produce, Inc. sold wholesale quantities of perishable agricultural commodities ("produce") to Defendant S&M Produce, Inc. ("S&M"), and S&M failed to pay for that produce.

On November 9, 2010, the Court entered a corrected judgment in favor of the PSJ Plaintiffs and against Defendant S&M. The judgment found the claims of each of the PSJ Plaintiffs to be valid and properly perfected trust claims under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t (2009 & Supp. 2010) (the "PACA") in the amounts stated as follows: (1) Pride of San Juan $ 64,545.00; (2) Classic Salads,LLC $ 59,414.27; (3) Dayoub Marketing,Inc. $ 30,732.40; (4) Fru-Veg Marketing,Inc. $ 12,645.84; (5) Lakeside Produce, Inc. $ 17,593.18; (6) Natural Forest, Inc. $ 14,631.03; (7) Ruby Robinson Co., Inc. $ 2,808.58; (8) The Kinoko Company $ 10,024.25; (9) The Mandolini Company, Inc. $ 1,340.86; and (10) Seashore West, Inc. $ 5,541.85. Defendant Lance Mided, one of two owners

of S&M and nephew to Defendant Donald Mided, filed a Chapter 7 bankruptcy petition and was dismissed from this action. The other owner, Donald Mided, admits that he is a "nominal stockholder of S&M Produce," but denies any day-to-day oversight of the company. His "nominal" holding is 53% of the shares of S&M, while Lance owns 47% of the corporate stock.

During the relevant time period, Defendant Mided was the president of S&M and was listed as one of two "Reported Principal(s)" on S&M's PACA license. The Illinois Secretary of State report provided by Plaintiffs lists only Lance Mided—as registered agent and secretary of S&M—and makes no mention of Don.[1] Don was one of two individuals who had signing authority on the S&M Produce checking account at South Central Bank & Trust in Chicago, Illinois, which "contained the proceeds of produce sales" from S&M's operations as a PACA licensee. Although Lance Mided typically deposited proceeds from S&M's sales into the S&M checking account, Don occasionally would deposit the proceeds if Lance was out of town. Defendant admitted in discovery responses that he "failed to make sure the Company's assets were used to make payment to Plaintiffs for the invoices at issue in this case," but denied that he had any obligation or ability to do so.

According to Don,[2] in 1998, he turned over all operational control to Lance (his nephew) and devoted his time to selling his computer software and services. Although Don continued to hold stock in the company, he had no duties or responsibilities for S&M after 1998 and made no decisions for or on behalf of S&M after he relinquished control. Don had no knowledge of how much produce was purchased, from whom, or who was paid and who was not, other than

---

[1] Don is listed as owner and president on a Lexis report submitted by Plaintiffs, but Plaintiffs have not advanced any argument on the legal viability or effect of such a document. While Don admits that he was president, he was not the registered agent for the company.

[2] Defendant Mided filed his cross motion for summary judgment and supporting materials on May 16, 2012. Plaintiffs were given two months to respond, but they failed to do so. Thus, all of Defendant's fact statements are deemed admitted.

incidental knowledge as a result of handling checks when filling them out or signing them at Lance's direction. However, Don was regularly at the S&M office, as he operated his software company out of the office and answered phones and made deposits when Lance was out of town.

Lance traveled a good deal. When he was out of town, he would leave batches of checks, filled out and signed by him, with dates indicating when they were to be mailed. The bookkeeper prepared an envelope with the days' receipts, which Lance took to the bank unless he was out of town, in which case Don made the deposits. When Lance was out of town, the bookkeeper relayed the daily receipts to him, and if Lance decided the deposit was not sufficient to cover that day's batch of checks, he decided which checks to send and which were to be held for another day. According to Don, he executed checks only when Lance specifically directed him to sign a check to a specific person or entity in a specific amount.

After turning over day-to-day operations in 1998, Don did not attend any meetings of the board of directors or stockholders. Don did not hire, fire, or supervise employees and did not sign any corporate minutes. He did not open S&M's mail, even when Lance was unavailable, but left the task to the bookkeeper. He also claims that he did not review S&M's bank statements or the company's books and records, but reviewed reports to shareholders. Don did not receive distributions, dividends, or tax credits and did not have a company expense account. He also did not sign contracts, leases, tax returns, or other documents on behalf of the company during the relevant period.

On February 25, 2011, the PSJ Plaintiffs filed a motion for summary judgment. The motion was later stricken with leave to re-file instanter. On the same date that the PSJ Plaintiffs' motion was re-filed, Defendant Don Mided moved for summary judgment against World Wide Produce, Inc. and Pearson Food Corporation and also cross-moved for summary judgment

4

against the PSJ Plaintiffs. Despite asking for, and receiving, a two-month extension of time to respond to Defendant Mided's summary judgment motion, the PSJ Plaintiffs failed to respond to Mided's motion. World Wide Produce, Inc., who brought an intervenor complaint against Donald Mided, also failed to respond. Pearson Food Corporation never brought claims against Donald Mided—Pearson's only claim was against S&M produce—so Defendant's motion for summary judgment as to Pearson is denied as moot.

## II. Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs.*, Inc., 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Industries, Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some

5

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

Because the PSJ Plaintiffs and World Wide Produce, Inc. have failed to controvert (or even respond to) Defendant Mided's statement of facts, the Court deems those facts admitted so far as they are supported by admissible record evidence.[3] See Local Rule 56.1(b)(3)(C); *Bell, Boyd, & Lloyd v. Tapy,* 896 F.2d 1101, 1102 (7th Cir. 1990).

## III. Analysis

Several circuits have held that the PACA statutory trust provision allows a plaintiff to recover against both a corporation and its controlling officers for breach of fiduciary duty. See, *e.g., Weis-Buy Svcs., Inc. v. Paglia,* 411 F.3d 415, 421-22 (3d Cir. 2005); *Golman-Hayden Co., Inc. v. Fresh Source Produce,* 217 F.3d 348, 351 (5th Cir. 2000). The Seventh Circuit has likewise indicated, albeit in dicta, that such an action may be maintained. *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.,* 307 F.3d 666, 669 (7th Cir. 2002) (citing *Golman-Hayden,* 217 F.3d at 351). To determine personal liability, a court must determine: (1) whether an individual's involvement with the company was sufficient to establish a legal responsibility; and (2) whether the individual breached a fiduciary duty to the PACA creditors. *Larry Shepard*

---

[3] Local Rule 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583–85 (N.D. Ill. 2000). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g., Malec,* 191 F.R.D. at 583. L.R. 56.1(b)(3)(C) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir.2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir.1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir.1995) (collecting cases)).

*v. KB Fruit & Vegetable, Inc.,* 868 F. Supp. 703, 705-06 (E.D. Pa. 1994). When determining an individual's involvement in the corporation, courts have looked to various factors such as whether an individual was a director (*Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 706 (2nd Cir. 2007)), had a role in causing the a breach of trust (*Shepard v. K.B. Fruit & Vegetable,* 868 F. Supp. 703, 706 (E.D. Pa. 1994)), had control of the day-to-day operations (*Okun, Inc. v. Zimmerman,* 814 F.Supp. 346, 449-50 (S.D.N.Y. 1993)), was active in the management of the company (*Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 283 (9th Cir. 1997)), signed for company accounts (*K.B. Fruit & Vegetable,* 868 F. Supp. at 706), or was the primary actor in failing to pay under PACA (*Bronia Inc. et al. v. Ho,* 873 F. Supp. 854, 861 (S.D.N.Y. 1995)). The PSJ Plaintiffs and Intervenor Plaintiff World Wide Produce, Inc. claim that Don Mided is personally liable for S&M's debt.

Defendant Don Mided asserts that he is not liable to World Wide and the PSJ Plaintiffs because he was only a "nominal" owner and officer of S&M Produce and he had no control over the day-to-day operations of the company. The PSJ Plaintiffs contend that, as president and one of only two owners of S&M, Defendant clearly was in a position to control the company if he wanted to do so.[4] Plaintiffs further maintain that individuals in Defendant's position are required either to (1) pay attention and act in the best interests of unpaid trust beneficiaries or (2) resign their positions and remove themselves from the PACA license.

In support of their position, the PSJ Plaintiffs highlight the following facts: Mided served as the president of the company and was listed as a "Reported Principal" on the S&M's PACA license; he owned over half the stock of S&M Produce; and he was one of two authorized signatories on the S&M checking account at South Central Bank & Trust in Chicago, Illinois

---

[4] Intervenor Plaintiff World Wide Produce never filed a response to Defendant's motion for summary judgment, and therefore the only arguments presented are those from the PSJ Plaintiffs and Defendant Don Mided.

(which "contained the proceeds of produce sales" from S&M's operations as a PACA licensee) and would occasionally deposit proceeds from S&M's sales into its checking account. Furthermore, while Don Mided may have relinquished control of the company, he never removed himself from the PACA license.

In response, Don Mided points out that in 1998 (well before the conduct at issue in this lawsuit) he turned over all operational control to Lance. Although Don continued to hold stock in the company, he had no duties or responsibilities for S&M after 1998 and made no decisions for or on behalf of S&M after he relinquished control. Although Don was regularly at the S&M office, he did not manage the company's affairs. When Lance would go out of town, Lance would sign and leave batches of checks with dates indicating when they were to be mailed. Lance also decided which checks to send and which were to be held for another day. Don maintains that he executed checks only when Lance specifically directed him to sign a check to a specific person or entity in a specific amount. The record also reflects that Don did not attend any meetings of the board of directors or stockholders, did not sign any corporate minutes, contracts, or tax returns on behalf of S&M, and did not hire, fire, or supervise employees. Nor did he review S&M's bank statements or the company's books and records. Furthermore, Don did not receive distributions, dividends, or tax credits and did not have a company expense account. There is no evidence that he received a salary or any compensation for role as president.

There is no dispute that Don was not involved in the day-to-day operations of S&M. Thus, the issue boils down to whether PACA liability attaches because Don Mided remained on the PACA license and held himself out as a corporate director by not resigning his position or taking himself off the corporate documents. Defendant stresses that there must be active

involvement on the part of an individual defendant for PACA liability to attach. Plaintiffs argue that the phrase "a person who is in a position to control trust assets" means one who is "legally responsible" for trust assets.

Courts have recognized that there are many small corporations in which an individual may hold corporate office or shares for entirely legitimate purposes and not exercise any day-to-day control over the company's affairs. *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F. Supp. 209 (E.D.N.Y. 1993). The Third Circuit recently considered the issue of whether an officer (also a shareholder) had actual control over the management of a PACA trust. *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 169 (3d Cir. 2010). According to the Third Circuit, whether an individual is liable under PACA turns not on whether he nominally held an officer (or, if argued, director) position, nor even the size of his shareholding, but rather on whether he had the authority to direct the control of (*i.e.*, manage) PACA assets held in trust for the producers. *Id.* If so, he is secondarily liable for breaching the duty to preserve the PACA trust. If not, then only the corporation itself (and any controlling individuals) would be responsible for the breach and therefore liable for the shortfall under PACA. *Id.*

In *Bear*, the Third Circuit held that the defendant—who was a corporate officer during the relevant time period and owned 50% of the stock in a small "mom and pop" corporation subject to PACA—had no actual authority over how her husband operated the company. The court reiterated the principle that many circuits have adopted for assessing claims of secondary liability under PACA: "[I]ndividual shareholders, officers, or directors of a corporation *who are in a position to control trust assets,* and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." *Bear*, 623 F.3d at 171; *Golman–Hayden v. Fresh Source Produce, Inc.,* 217 F.3d 348, 351 (5th Cir. 2000); see also *Coosemans Specialties, Inc. v.*

*Gargiulo,* 485 F.3d 701, 705-06 (2d Cir. 2007); *Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 283 (9th Cir. 1997). The court concluded that, regardless of the wife's title or ownership status during the relevant time period, the evidence presented at trial established that she did not possess the power to manage the plaintiffs' PACA assets. Supporting the court's conclusion was the fact that all management decisions were made by her husband, aided by his office manager.[5]

Like the plaintiffs argued in *Bear*, Plaintiffs here argue for a bright-line rule: If an individual is an officer, director, or shareholder of a corporation, then he is by that fact in a position to control the PACA trust assets. Pursuant to this view, "position" is to be understood as meaning just that—one's *formal* position within the corporation—and context should not matter. This is a temptingly straightforward approach. Yet it has not been adopted in any of the cases advanced by Plaintiffs. Instead, appellate courts that have addressed this issue have taken a more nuanced view, focusing on how each corporation is actually managed, such that the "context" matters. See, e.g., *Sunkist Growers,* 104 F.3d at 283 (explaining that "[a] court considering the liability of [an] individual [under PACA] may look at 'the closely-held nature of the corporation, the individual's active management role[,]' and any evidence of the individual's

---

[5] The district court cases, read as a whole, are not as consistent as the appellate court decisions, but also suggest that individuals may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust. See *Shepard v. K.B. Fruit & Vegetable, Inc*., 868 F. Supp. 703, 706 (E.D. Pa. 1994); see also *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F. Supp. 346, 348 (S.D.N.Y. 1993) (holding that sole shareholder of the corporation licensed to sell produce under PACA was secondarily liable to PACA trust creditors as a corporate fiduciary, because "[a]n individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is personally liable for that tortious act"); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F. Supp. 209 (E.D.N.Y. 1993) (finding president of company personally liable to PACA creditors based on its finding that he knowingly caused the corporation to breach its duty as a trustee, but finding insufficient evidence of record to hold president's wife—owner of 100% of the stock—liable because she could not be presumed to have exercised control over the company's affairs); *West Indian Sea Island Cotton Ass'n v. Threadtex, Inc.,* 761 F. Supp. 1041, 1054 (S.D.N.Y. 1991) (an officer who causes a corporate trustee to commit a breach of trust which causes a loss to the trust is personally liable to the beneficiaries for that loss). The cases do not suggest that individuals can be found secondarily liable merely because they served as corporate officers or shareholders.

acting for the corporation.") (quoting *Frio Ice v. SunFruit, Inc.,* 724 F. Supp. 1373, 1382 (S.D. Fla. 1989)); *Hiller Cranberry Products,* 165 F.3d at 9 (assessing a suit against the president and sole shareholder and noting that PACA imposes liability on "a *controlling* person of th[e] corporation, who uses the trust assets for any purpose other than repayment of the supplier") (citations omitted); *cf. Golman–Hayden,* 217 F.3d at 351 (concluding that the defendant's sole shareholder was liable under PACA because he "manifestly had absolute control of the corporation"). Taken together, these cases suggest a test that takes into account formal positions but relies primarily on context, calling on courts to (i) determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (*e.g.,* officer, director, and/or controlling shareholder) and (ii) assess whether that individual's involvement with the corporation establishes that she was *actually* able to control the PACA trust assets at issue. See *Bear*, 623 F.3d at 172. As the Third Circuit has summarized, "[a] formal title alone is insufficient—especially when faced with a small, 'mom and pop' corporation * * * where formalities may be less meaningful." *Id.*

Don Mided's situation presents a reasonably close question under this approach. He admitted to being an officer (president) during the relevant time period and also held 53% of the corporate stock. However, he disputes that he actually had the power to control the PACA trust assets at that time. The evidence presented by Plaintiffs—a website page listing Donald Mided as a reported principal on the PACA license of S&M Produce and a Lexis report listing him as the president—suggests on the surface that Don Mided was involved in operating the corporation and, therefore, may have given the perception that he could control the PACA trust assets. However, Defendant's uncontroverted facts establish his very limited role in operating the corporation. Importantly, Don stated that he was not involved in any of S&M's business

11

decisions (major or minor) and had not been involved in the day-to-day management of the corporation for approximately ten years. This assessment was confirmed by S&M's office manager and by Lance Mided and was not challenged by Plaintiffs. Furthermore, there is no evidence that Don received a salary, distributions, dividends, or tax credits or performed any duties beyond depositing proceeds and greeting people who stopped by the office – both of which he did only when Lance was travelling. Both Lance and the officer manager confirmed that all business decisions were made by Lance, even when he was traveling, and that the only time Don ever signed a check was at the direction of Lance. Don also did not sign contracts, leases, tax returns, or any other documents on behalf of S&M during the relevant time period.

In *Bear*, the plaintiffs presented evidence that the spouse was a 50% shareholder, signed corporate documents, and worked part-time, but the Third Circuit held that this was not enough to establish personal liability. Here, the evidence is even more scant. Plaintiffs chose not to respond to Defendant's summary judgment motion and failed to bring forward any evidence beyond two webpage printouts and some discovery responses, which admitted nothing beyond the bare minimum. Plaintiffs did not present evidence that Don signed documents or worked for S&M at all, let alone received a salary or distributions from the company. Nor did they present evidence that Don held himself out as a principal of S&M, or that they spoke with Don and extended credit to S&M in reliance on his promises or good will. Finally, although Don admits that he occasionally signed checks at his nephew's direction, Plaintiffs have not submitted a copy of a single check that he signed.

Given Plaintiffs' scant evidentiary showing, their position rests entirely on the notion that Defendant, as a corporate officer and part-owner with the authority to sign checks, necessarily was in a position to control the trust assets and must be held individually liable for failing to

preserve them. The Third Circuit rejected that exact position. *Bear*, 623 F.3d at 174 ("We disagree. The evidence presented * * * support[s] the conclusion that Mrs. Fleisher was not in a position to manage Fleisher Produce generally, and the trust assets specifically, in any meaningful way."). The evidence here shows that, like the "mom and pop" corporation in *Bear*, S&M was a family company in which one relative—nephew Lance—essentially had all the power (and what he did not have was exercised by his office manager). In *Bear*, the wife was a subordinate; here, Don Mided who was entirely left out of the management of the company. In sum, the minimal evidence offered by Plaintiffs in support of their claim for personal liability against Don Mided falls short of demonstrating that Don possessed the requisite control over trust assets that would support a finding of liability. *Cf. Weis-Buy Farms, Inc. v. Quality Sales LLC*, 2012 WL 280617, at *14 (D. Conn. Jan. 31, 2012) (concluding that the executive vice president—who purchased produce to fill existing orders, had signature authority on the operating account, received a salary, and drove a company car—was not personally liable because he was not in a position to oversee the preservation of trust assets); *Anthony Marano Co. v. MS-Grand Bridgeview, Inc.*, 2010 WL 5419057, at 11 (N.D. Ill. Dec. 23, 2010) (holding personally liable a one-third shareholder, who had served as vice president and night manager, oversaw not only the produce but also other trust assets, was a signatory on the bank account, and attended shareholder meetings, but did not review the financial accounts).

## IV. Conclusion

For the reasons stated above, the Court denies the PSJ Plaintiffs' motion for summary judgment [252] and grants in part and denies in part Defendant Don Mided's motion for summary judgment [268]. Defendant's motion as it pertains to Pearson Food Corporation is denied as moot as its intervenor complaint does not allege a claim against Don Mided

individually; Defendant's motion as it pertains to the PSJ Plaintiffs and World Wide Produce, Inc. is granted. Given that all claims asserted against Don Mided individually are dismissed and all other claims in this litigation have been dismissed or adjudicated, the Court will enter a final judgment.

Dated: March 19, 2012 _____
Robert M. Dow, Jr.
United States District Judge